**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SAMUEL LEDERMAN, et al.,** ) | **CASE NO. 1:07 CV 845** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **JUDGE DONALD C. NUGENT** |
| ) | |
| **STEPHEN POPOVICH, et al.,** ) | |
| ) | **MEMORANDUM OPINION** |
| **Defendants.** ) | |

This matter is before the Court upon the Motion to Dismiss Plaintiffs' Corrected Amended Complaint for Failure to State a Claim on Which Relief Can Be Granted (Docket #37) filed by Defendants Stephen Popovich and Popovich Music Group, LTD (collectively referred to as "Popovich").  Popovich moves the Court to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**Factual and Procedural Background**

**I.     Cleveland Entertainment, Inc.**

In 1977, Plaintiffs, Samuel Lederman and Stanford Snyder, and Defendant, Stephen Popovich, formed a closely held corporation, Cleveland Entertainment, Inc. ("Cleveland Entertainment").  (Corrected Amended Complaint at ¶¶ 14, 17 and 18.)  Cleveland Entertainment, a New York corporation, was formed to engage in the business of producing,

marketing, distributing, and licensing the recorded performances of recording artists, and the personal management of recording artists. (Id. at ¶ 18.) As stated in the Complaint, Stephen Popovich was, and is, the majority shareholder of Cleveland Entertainment, owning 51 shares. (Id. at ¶ 19.) Snyder and Lederman were and are minority shareholders, owning 29 shares and 20 shares respectively. (Id.) According to the facts alleged in the Corrected Amended Complaint, the Sole Directors and Officers of Cleveland Entertainment were and are Popovich, Snyder and Lederman. (Id. at ¶ 20.)

As part of its business, Cleveland Entertainment entered into an agreement with the recording artist known as "Meatloaf." (Id. at ¶ 28-30.) Cleveland Entertainment also entered into an agreement with CBS pursuant to which CBS was to manufacture and distribute the Meatloaf recordings. (Id. at ¶ 31.) CBS was required to pay certain royalties to Cleveland Entertainment. (Id. at ¶ 32.) The Meatloaf recordings were highly successful. (Id. at ¶¶ 32-36.)

In 1991, Cleveland Entertainment was dissolved by the New York Secretary of State of nonpayment of franchise fees. (Id. at ¶ 40.)

Sony Music Entertainment, Inc. ("SMEI") became the successor-in-interest to CBS. (Id. at ¶ 38.) On September 7, 1995, Popovich, Lederman, and Snyder sent a Letter of Direction to SMEI, directing that royalties be paid directly to them, *pro rata*. (Id. at ¶ 40.)

**II.     1995 Lawsuit and 1998 Settlement Agreement.**

On September 18, 1995, Cleveland Entertainment, in its own name, sued SMEI for royalties due on the Meatloaf recordings. (Id. at ¶ 41.) Cleveland Entertainment was the sole plaintiff in that suit. In or about 1996, Meatloaf commenced an action against SMEI and Cleveland Entertainment, asserting claims arising from the Cleveland-CBS and Cleveland-

Meatloaf Entertainment Agreements. (Id. at ¶ 42.)

In 1998, the Parties settled their claims and, on February 17, 1998, a Settlement Agreement was executed and signed by Popovich, as an authorized signatory of Cleveland Entertainment, and individually by Popovich, Lederman and Snyder. (Id. at ¶ 44.) The Settlement Agreement addressed the issues of the payment of past due royalties and provided for an advance against future royalties. (Id.) The Settlement Agreement also addressed the issues of the proper labeling of the Meatloaf albums with the Cleveland Logo; rates to be paid to Cleveland Entertainment on future Meatloaf sales; preservation in Cleveland Entertainment of the right to receive royalty payments and to conduct future audits; and, confirmation and ratification of the original Cleveland Entertainment-CBS Agreement. (Id.)

Pursuant to the 1995 Letter of Direction (directing SMEI to pay royalties directly to Popovich, Lederman and Snyder), Popovich and Lederman received the periodic accountings from SMEI called for by the Settlement Agreement and the prior agreements against royalties otherwise due. (Id. at ¶ 47.) At some point, the advance on royalties was fully recouped and SMEI began making royalty payments to Popovich, Snyder and Lederman. (Id. at ¶ 48.)

### III. Lawsuits Filed by Popovich.

Plaintiffs assert that in 2002, Popovich attempted to assert his audit rights pursuant to the Settlement Agreement and the Cleveland-CBS Agreement, and he came to believe that SMEI had substantially underpaid Cleveland Entertainment and had failed to place Cleveland Entertainment's Logo on all Meatloaf recordings after February 1998. (Id. at ¶¶ 49-51.) On March 9, 2000, Popovich sued SMEI ("the First SMEI Action") in the Cuyahoga County Court of Common Pleas. The case was subsequently refiled in this Court, *Popovich v. Sony Music*

*Entertainment, Inc.*, Case No. 1:02 CV 359, with Judge Solomon Oliver.  (Id. at ¶ 52.)  Plaintiffs claim that Popovich did not consult with or advise Lederman or Snyder that he intended to file the First SMEI Action or that he would assert that ownership rights in the Cleveland Logo with respect to the Meatloaf recordings belonged to Popovich or Popovich Music Group, rather than to Cleveland Entertainment and its shareholders.  (Id. at ¶ 58.)

The First SMEI Action alleges that SMEI breached the terms of the 1998 Settlement Agreement by failing to place the Cleveland Logo on Meatloaf Recordings.  Popovich states that the basis of the First SMEI Action is SMEI's "failure to put the Logo for Popovich's record label (Cleveland International Records) on approximately 10 million Meatloaf CDs between 1998 and 2004."  According to Popovich, Cleveland Entertainment ceased doing business in 1983 and he continued to do business using the name "Cleveland International Records," alleged by Popovich to be a record label previously used by Cleveland Entertainment.  Popovich asserts that after the dissolution of Cleveland Entertainment, Popovich retained the rights to use the Cleveland International Records name and label.  (Id. at ¶¶ 54-57.)  The Complaint in the First SMEI Action asserts that Stephen Popovich and Popovich Music Group bring the action "on behalf of themselves and as successors-in-interest to the recording label Cleveland International Records."  (Id. at ¶ 53.)

The First SMEI Action was tried and, on May 27, 2005, a jury verdict in excess of $5 million was rendered in favor of the plaintiffs against SMEI.  Judgment was entered on May 31, 2005.  The case is currently on appeal with oral argument scheduled for September.  (Id. at ¶ 61).

On May 3, 2006, Popovich filed a second case against SMEI, *Popovich v. Sony Music*

*Entertainment, Inc*., Case No. 2:06 CV 1096, in the United States District Court for the Northern District of Ohio ("the Second SMEI Action").  (Id. at ¶ 63.)   The Second SMEI Action is a RICO case, based on claims that SMEI failed to account for and pay royalties due under the Settlement Agreement.  (Id. at ¶ 64.)  The Second SMEI Action also alleges breaches of the Settlement Agreement as to the Cleveland Logo.   Popovich sues "on behalf of himself and as successor-in-interest to the recording label Cleveland International Records."  (Id.)  The Second SMEI Action has been stayed pending a decision from the Sixth Circuit Court of Appeals in the First SMEI case.

Plaintiffs' Corrected Amended Complaint alleges that upon learning of the Jury Award, the First SMEI Action, and, the Second SMEI Action, Plaintiffs demanded Popovich and Popovich Music Group agree that the proceeds obtained with respect to the Jury Award, the First SMEI Action, and the Second SMEI Action be paid to Cleveland Entertainment for distribution to its shareholders.  (Id. at ¶ 67.)  Plaintiffs state that Popovich has asserted that any proceeds that may be obtained with respect to the Jury Award and in either the First SMEI Action or the Second SMEI Action with respect to the Cleveland Logo belong solely to Popovich and/or Popovich Music Group and, that the royalty claim in the Second SMEI Action seeks only Popovich's 51% share of royalties due.  (Id. at ¶ 68.)  Plaintiffs state that there is nothing in the Complaint in the Second SMEI Action limiting Popovich's claim for royalties to 51%.  (Id.)

**IV.    The Instant Action.**

On October 27, 2006, Plaintiffs Samuel Lederman and Stanford Snyder filed this case against Defendants Stephen Popovich; the Popovich Music Group; Stakeholder Defendant Sony BMG Music Entertainment; Stakeholder Defendant Sony Corporation of America; Stakeholder

-5-

Defendant Bertelsmann Music Group, Inc.; and, Nominal Defendant Cleveland Entertainment Company, Inc.  Plaintiffs assert that Popovich had no right to cause the transfer of claims and assets belonging to Cleveland Entertainment or its shareholders to Popovich and/or Popovich Music Group and that attempts by Popovich or Popovich Music Group to retain all of the Jury Award and all additional sums owed with respect to the Cleveland Logo is an improper and illegal misappropriation of the assets of Cleveland Entertainment. (Id. at ¶ 69.)  Further, Plaintiffs argue that Popovich's purported assertion of the right to personally receive a percentage of royalties payable to Cleveland Entertainment under the 1998 Settlement Agreement violates his fiduciary duties to Cleveland Entertainment, Lederman and Snyder.  (Id. at ¶ 70.)  Plaintiffs assert that any claim for such royalties should be prosecuted in the name of and on behalf of Cleveland Entertainment for the benefit of all its shareholders.  (Id.)  By purporting to prosecute such a claim personally and only for a percentage of the amount due, Plaintiffs argue that Popovich has violated his fiduciary duties to Cleveland Entertainment and its shareholders.  Plaintiffs assert that this improperly splits a cause of action belonging to Cleveland Entertainment and may deprive Cleveland Entertainment and its shareholders of the ability to recover the balance owed to them.  (Id. at ¶ 70.)

The Complaint sets forth claims for breach of fiduciary duty; unjust enrichment; conversion; and, for an accounting, against Popovich and Popovich Music Group. Plaintiffs assert that any sums recovered as a result of the Jury Verdict, and First SMEI Action or the Second SMEI Action are the property of and belong to Cleveland Entertainment or to its share holders, *pro rata*.  Plaintiffs state that Popovich and Popovich Music Group should be required to account for and pay over to Cleveland Entertainment or its shareholders, *pro rata*, all

-6-

such sums, and that the Stakeholder Defendants should be directed and required to pay all such sums to Cleveland Entertainment, or to its shareholders, *pro rata*, not to Popovich or Popovich Music Group.

**V.     Popovich's Motion to Dismiss.**

On July 9, 2007, Defendants Popovich and Popovich Music Group filed their Motion to Dismiss Plaintiffs' Complaint. (Docket #37.) Popovich asserts that Plaintiffs' Complaint fails to state facts upon which relief can be granted. Popovich asserts that had Plaintiffs believed they were entitled to damages, they should have joined in the First SMEI Lawsuit, arguing that Plaintiffs have avoided the expense and responsibility of pressing their own claims. (Motion to Dismiss at pp. 2-3.) Popovich asserts that the Cleveland Logo belongs to his record label, Cleveland International Records. As stated above, Popovich argues that when Cleveland Entertainment stopped doing business, he continued to do business using the name Cleveland International Records and, therefore, that the Logo claims are his to assert. Popovich argues that Plaintiffs' claims are properly asserted against SMEI, not Popovich or Popovich Music Group. (Id. at p. 3.)

Popovich argues that to the extent that any of Plaintiffs' claims are valid, the applicable statutes of limitation have run. (Id. at p. 3.) Popovich states that it has been 24 years since Plaintiffs and Popovich stopped doing business together and that Cleveland Entertainment was dissolved by the State of New York 15 years ago, in 1991. (Id. at pp. 3-4 and 6.) Popovich argues that any claim for relief related to the allegedly improper dissolution of Cleveland Entertainment should have been brought, at the latest, within 6 years from the dissolution of Cleveland Entertainment in 1991. (Id. at p. 4.) Popovich asserts that the alleged duties which

Plaintiffs claims rely do not exist because Popovich had no continuing legal duty to Plaintiffs after their business relationship ended.  (Id. at p. 4.)  The Motion to Dismiss relies on the assertion that certain rights in Cleveland Entertainment were assigned to Popovich.  (Id. at p. 8.)

Popovich argues that the applicable statutes of limitations began to run, at the latest, when Cleveland Entertainment was dissolved in 1991.  First, with regard to Plaintiffs claim for breach of fiduciary duty, Popovich states that the applicable statutes of limitation under New York and Ohio law are 3 and 4 years respectively.  (Id. at p. 11.)  Therefore, Popovich argues that the filing of the instant case on October 27, 2006 falls beyond the statute of limitations, as it should have been filed, at the latest, within 4 years of Cleveland Entertainment's dissolution.  Further, Popovich asserts that Cleveland Entertainment was inactive after it ceased doing business in 1983 and "if Plaintiffs believed the Company still had assets or was still active in some other fashion, it is unreasonable under any conceivable standard for Plaintiffs as minority shareholders not [sic] inquire about the status of Cleveland, Inc." and, that "Plaintiffs slept on their rights for far too long."  (Id. at pp. 13-14.)

Second, Popovich states that the applicable statutes of limitation for a conversion claim under New York and Ohio law are 3 and 4 years respectively.  (Id. at p. 14.)  Again, Popovich argues that the statute of limitations began to run, at the latest, when Cleveland Entertainment was dissolved in 1991.  (Id. at p. 15.)  Therefore, Popovich argues that the conversion for which Plaintiffs seek damages occurred at least fifteen years before this action was initiated.  (Id. at p. 16.)

Third, Popovich states that the applicable statute of limitations for a claim of unjust enrichment is 6 years.  Popovich reiterates the argument of limitations period began to run

-8-

shortly after Cleveland Entertainment was dissolved in 1991. (Id. at p. 17.) Further, Popovich argues that this claim fails because it is based upon "events that have not yet occurred," specifically, the collection on a judgment or settlement by Popovich from SMEI. (Id.) However, Popovich also argues that Plaintiffs' allegations are based on events that occurred long ago and that they should have asserted their rights to the assets at issue much sooner. (Id.)

Fourth, Popovich states that a derivative action against a director of a corporation must be commenced within 6 years under New York law and 10 years under Ohio law. (Id.) Again, Popovich states that Cleveland Entertainment stopped doing business in 1983 and was dissolved in 1991. (Id. at p. 18.) Therefore, even under the 10-year statute of limitations, the claim for an accounting must fail.

**VI.     Plaintiffs' Opposition to Popovich's Motion to Dismiss.**

On August 30, 2007, Plaintiffs filed their Memorandum in Opposition to Popovich's Motion to Dismiss. (Docket #43.) Plaintiffs argue that the claims asserted are not time-barred. Specifically, Plaintiffs state that Popovich has grossly mischaracterized the nature of the claims asserted. (Memorandum in Opposition at p. 5.) Plaintiffs state that this action does not arise because Popovich allowed Cleveland Entertainment to be dissolved in 1991, nor is it based upon asserted assignments that Plaintiffs argue never occurred. (Id.) Rather, Plaintiffs state that the current lawsuit arises because Popovich and Popovich Music Group are misappropriating assets that belong to Cleveland Entertainment, arguing that any funds ultimately recovered as a result of the Jury Verdict and the First and Second SMEI Actions are assets of Cleveland Entertainment. (Id.)

With regard to the First SMEI Lawsuit, Plaintiffs argue that the earliest conceivable date

upon which their claims arose is May 31, 2005, the date when Judgment was entered in the First SMEI Action, thereby creating an asset which belonged to Cleveland Entertainment. (Id. at 6.) Relative to the Second SMEI Action, Plaintiffs' state that their claims are "forward-looking" and seek to establish rights in any ultimate recovery. (Id.) Therefore, whatever the applicable statutes of limitation are, Plaintiffs argue they have not run. The purpose of this action, Plaintiffs state, is to determine that Cleveland Entertainment, not Popovich, is entitled to receive the proceeds of the Jury Verdict and the two SMEI Actions and, as of this date, whether there will be any proceeds has not yet been finally determined. The purpose of this action is "to assure that payment goes to Cleveland Entertainment." (Id.)

Plaintiffs state that although Cleveland Entertainment was dissolved in 1991, it continues to possess the ongoing right to sue and be sued in order to collect assets and, ultimately wind up its business. (Memorandum in Opposition at p. 7 (citing Section 1005 and 1006 of the New York Business Corporation Law; *Tedesco v. A.P. Green Indus., Inc.*, 8 N.Y.3d 243, 864 N.E.2d 65 (2007); *Matter of Milton L. Erlich, Inc.*, 5 N.Y.2d 275, 157 N.E.2d495 (1959))). Plaintiffs argue that as president, director and majority shareholder of Cleveland Entertainment, a close corporation, Popovich owed his two fellow shareholders fiduciary obligations. (Id. at p. 7 (citing *O'Neill v. Warburg Pincus & Co.*, 39 A.D.3d 281, 282, 833 N.Y.S.2d 461, 462-63 (1st Dep't 2007); *Richbell Information Serv., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 300, 765 N.Y.S.2d 575, 585-86 (1st Dep't 2003))). Plaintiffs assert that the dissolution of Cleveland Entertainment did not end the fiduciary obligations of Popovich and that the fiduciary obligations may be enforced by way of a derivative action. (Id. at p. 8 (citing *In Re Baldwin Trad. Corp.*, 8 N.Y.2d 1444, 149, 168 N.E.2d 383, 202 N.Y.S.2d 312 (1960)); *Independent*

*Investor Protective League v. Time, Inc.*, 50 N.Y.2d 259, 261, 406 N.E.2d 486, 428 N.Y.S.2d 671 (1980); *Maki v. Ziehm's Estate*, 55 S.D.2d 454, 456, 391 N.Y.S.2d 705 (3d Dep't 1977))).

Plaintiffs also assert that no documents exist which transfer the claims asserted in the First SMEI and Second SMEI Actions to Popovich or Popovich Music Group and, to the contrary, the Settlement Agreement signed in 1998 by Popovich expressly preserved Cleveland Entertainment's right to receive royalties and conduct audits.  (Memorandum in Opposition at p. 9.)  Plaintiffs state that the only plaintiff in the lawsuit filed in 1995 was Cleveland Entertainment, as the assets of Cleveland Entertainment were never assigned to its former shareholders.  (Id. at p. 10.)  The Settlement Agreement provides that payment of royalties will be paid to Cleveland Entertainment and expressly provides that "Cleveland Entertainment shall retain the right . . . to receive accountings and royalty payments from Sony music, and shall retain its audit rights pursuant to the [Settlement Agreement]."

Finally, Plaintiffs assert that the statutes of limitation applicable to their claims have not run.  (Id. at p. 12.)

### VII. Popovich's Reply Brief.

On October 15, 2007, Popovich filed a Reply Brief.  (Docket #46.)  Popovich reasserts the argument that the applicable statutes of limitation have run on Plaintiffs' claims.  Popovich argues that the right to use the name Cleveland International Records and to do business under the name Cleveland Entertainment and to use the Cleveland International Records Logo were transferred to Stephen Popovich individually when Cleveland Entertainment stopped doing business in 1983.  (Reply at pp. 1-2.)  Popovich states that he has been operating openly and notoriously under the Cleveland International Records and Cleveland Entertainment names since

-11-

the shareholders parted ways in 1983.  (Id. at p. 2.)

Popovich asserts that Plaintiffs failed to intervene or participate in the First SMEI Action, and waited until they learned of the Jury Verdict to make raise their claims.  (Id.)  Popovich argues that the fact that in 1995 the Parties requested that SMEI pay them royalties individually shows that they couldn't have actually believed that the royalties belonged to Cleveland Entertainment.  (Id. at p. 3.)

**Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).  In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff.  *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing

that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### Discussion

The Motion to Dismiss filed by Popovich mischaracterizes the claims asserted by Plaintiffs. Plaintiffs seek to establish that any recovery from SMEI as a result of the Verdict and the First and Second SMEI Actions filed by Popovich be paid to the corporation, Cleveland Entertainment, and divided *pro rata* among its shareholders, Popovich, Lederman and Snyder. Contrary to the assertions of Popovich, the lawsuit does not appear to raise any claims against Popovich for his actions relative to the dissolution of Cleveland Entertainment by the State of New York in 1991, nor does the Complaint raise claims relative to Popovich's management of Cleveland Entertainment since its dissolution in a context other than the rights of Cleveland Entertainment to any sums recovered as a result of the Jury Verdict and First or Second SMEI Actions.

Aside from the self-serving statements made by Popovich, there is no evidence to suggest that Popovich was "assigned" Cleveland Entertainment, or the rights to royalties from the Meatloaf recordings. Further, there is no evidence that Popovich was assigned the sole right to enforce and sue for damages relative to the use or non-use of the Cleveland Logo after its

dissolution, or at any other time.

Popovich argues that he "has been operating openly and notoriously under the CIR and Cleveland names since the shareholders all parted ways in 1983" and that this establishes that the assets of Cleveland Entertainment were transferred or assigned to him. However, the fact that Cleveland Entertainment filed a lawsuit in 1995 relative to royalties and logo use for the Meatloaf recordings, and that Lederman, Snyder and Popovich were all involved in the litigation and settlement of the claims raised, would appear to contradict Popovich's claim that he was transferred or assigned the assets of Cleveland Entertainment. As alleged in the Corrected Amended Complaint, the 1998 Settlement Agreement was signed by Popovich on behalf of Cleveland Entertainment, as well as by Popovich, Lederman and Snyder individually. The Settlement Agreement provides direction with regard to the royalties to be paid to Cleveland Entertainment and the use of the Cleveland Logo with respect to the Meatloaf recordings, alleged by Plaintiffs to be an asset of Cleveland Entertainment.

In his Motion to Dismiss, Popovich states the following:

> Popovich recently recovered a jury verdict and judgment in excess of $5,000,000 in a case tried to verdict in the United States District Court, N.D. of Ohio. (Citation omitted.) Although Plaintiffs were not parties to that lawsuit, never sought to intervene in that lawsuit, and never claimed any interest in that lawsuit, they allege here that Popovich somehow asserted claims that still belonged to their old company, Cleveland, Inc. Thus, according to Plaintiffs, Popovich's refusal to promise them a share of that judgment, if and when it is ever collected, is a breach of his fiduciary duties to them as minority shareholders in the defunct company. Realizing that the dissolution of Cleveland Inc. in 1991 poses a problem, Plaintiffs further complain that Popovich was responsible for maintaining its corporate existence all these years, improperly allowed it to be dissolved, and is now somehow responsible for failing to properly manage the company.

(Popovich's Motion to Dismiss at p. 1.)

-14-

As stated above, although Cleveland Entertainment was dissolved by the State of New York in 1991, it is clear that Cleveland Entertainment, including all three of its original shareholders, continued to assert its rights to royalties and logo use from the Meatloaf recordings. The rights and obligations of the Parties outlined in the 1998 Settlement Agreement with respect to the Meatloaf recordings form the basis of the lawsuits initiated unilaterally by Popovich. Although Plaintiffs Lederman and Snyder did not participate in the First SMEI Action, there is no evidence before the Court that the rights agreed to by the Parties and the obligations of SMEI toward Cleveland Entertainment were ever abrogated as suggested by Popovich. Further, there is no evidence that the rights of Lederman and Snyder, as individual shareholders of Cleveland Entertainment, were ever assigned or transferred to Popovich. Therefore, the Court finds no basis for Popovich's argument that the statute of limitations on Plaintiffs' claims began to run in 1991, or at any time prior.

Plaintiffs' claims for breach of fiduciary duty, unjust enrichment, conversion, and an accounting flow from the jury verdict award to Popovich, and any future recovery on the SMEI lawsuits, sums alleged by Plaintiffs to be assets of Cleveland Entertainment. Therefore, the Court agrees with Plaintiffs that the earliest the statute of limitations began to run was May 31, 2005, the date upon which judgment was entered in the First SMEI Action.[1] Plaintiffs' lawsuit

---

[1]

To the extent that Plaintiffs' breach of fiduciary duty claim encompasses the allegation that in unilaterally asserting the claims of Cleveland Entertainment, Popovich breached his fiduciary duty, the Court recognizes that there may be questions as to when the statute of limitations began to run relative to the First SMEI Action. Paragraph 70 of the Corrected Amended Complaint reads, "Any claim for such royalties should be prosecuted in the name of and on behalf of Cleveland for the benefit of all its shareholders. Popovich has violated his fiduciary duties to Cleveland and its shareholders by purporting to prosecute such a claim personally and only for a percentage of the amount due." Plaintiffs' Opposition Brief, at p. 6, states that the

was filed on October 27, 2006, less than 2 years later. Accordingly, the applicable statutes of limitation had not yet run.

In addition to arguing that Plaintiffs' claims are barred by the applicable statutes of limitation, Popovich argues that he "has never taken action to secure any royalties beyond those which he is due" and, therefore, "he could not have breached any duty to the company or Plaintiffs, could not have been unjustly enriched, did not convert any assets belong to the company or Plaintiffs, and Plaintiffs have no basis to seek an accounting." This argument would seem to contradict the assertion that Popovich was previously assigned all rights and interests in Cleveland Entertainment, which provides the entire basis for Popovich's Motion. Regardless, on a Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court is testing the legal sufficiency of the Complaint, construing the complaint in the light most favorable to the plaintiff, accepting factual allegations as true, and drawing reasonable inferences in favor of the plaintiff.

---

"purpose of this action is to determine that Cleveland Entertainment - not defendants - is entitled to receive the proceeds of the two SMEI Actions."

Popovich does not argue that the statute of limitations on the fiduciary duty claim began to run when he filed the First SMEI Action, aside from stating that despite the filing of his original action in 2000, Plaintiffs never attempted to intervene or participate. In fact, in his Motion to Dismiss, at p. 12, Popovich states "Plaintiffs cannot point to the filing of the Cleveland, Ohio lawsuits as the dates on which the alleged breaches occurred." Popovich also states that Plaintiffs cannot rely on the "discovery rule" to toll the statute of limitations. All of Plaintiffs' statute of limitations arguments appear to rest upon the assertion that Cleveland Entertainment ceased doing business in 1983 and was dissolved in 1991.

Regardless of whether the breach of fiduciary duty claim is meant to include the allegation that the act of asserting the claims individually was a breach of fiduciary duty, there remains the allegation that the failure to pay the proceeds of the Jury Verdict and SMEI Actions to Cleveland Entertainment was a breach of fiduciary duty. Under either claim, the relief sought by Lederman and Snyder is the same. Therefore, although the Parties have not addressed the statute of limitations in this context, the Court finds it to be immaterial for purposes of Popovich's Motion to Dismiss.

*See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  There is no evidence properly before the Court to support Popovich's assertion that Plaintiffs' claims fail because the only relief obtained and sought by Popovich by way of the SMEI actions was limited to his 51% interest, as is suggested by Popovich.  Accordingly, the Court finds this argument to be without merit.

The Court also notes that Popovich's arguments that Plaintiffs should be precluded from asserting their claims because they "carefully avoided taking on the expense and responsibility of pressing their own claims" is misplaced.  The Motion to Dismiss filed by Popovich is based on Popovich's assertions that he was the assignee or transferee of the rights and assets of Cleveland Entertainment and that Plaintiffs' claims were filed beyond the applicable statutes of limitation.  The issue of whether any sums recovered as a result of the First or Second SMEI Actions are assets of Cleveland Entertainment has yet to be determined.  Once determined, the Parties would then be in a position to address the issue of attorneys' fees expended in enforcing the rights and obligations of the Parties with respect to the Meatloaf recordings.

**Conclusion**

Based on the foregoing, the Motion to Dismiss Plaintiffs' Corrected Amended Complaint for Failure to State a Claim on Which Relief Can be Granted (Docket #37) filed by Defendants Stephen Popovich and Popovich Music Group, LTD is hereby DENIED.

IT IS SO ORDERED.

                                                s/Donald C. Nugent
                                                DONALD C. NUGENT
                                                United States District Judge

DATED: July 15, 2008